**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

<table>
<tr><td>

PEDRO SALAZAR,

          Petitioner,

          v.

UNITED STATES OF AMERICA,

          Respondent.

</td><td>

**Civil No. 25-1623 (GMM)**

related to

**Criminal No. 24-153-2 (GMM)**

</td></tr>
</table>

## OPINION AND ORDER

Before the Court are Mr. Pedro Salazar's ("Petitioner") pro-se *Motion under 28 U.S.C. 2255 to Vacate, Set Aside, or Correct Sentence* ("*Motion to Vacate*") in Criminal Case No. 24-153. (Docket No. 1)[1] and the *United States' Response in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255*. (Docket No. 5).

For the reasons set forth, the Court finds that Petitioner's *Motion to Vacate* his sentence must be **DENIED.**

---

[1] Notably, Petitioner's co-defendants in Crim. No. 24-153 (GMM) filed nearly identical motions to vacate their convictions and sentences on the same grounds.

Civil No. 25-1623 (GMM)
Page -2-

## I.   BACKGROUND

According to the undisputed record n August 9, 2021, while on routine patrol, the Dutch warship Holland, with embarked United States Coast Guard ("USCG") Law Enforcement Detachment Team located a target vessel travelling eastbound, approximately 17 nautical miles southwest of Willemstad, Curacao. (Crim. No. 24-153 (GMM), Docket Nos. 79 at 13; 124 at 7). The vessel was described as a go-fast vessel, with four persons on board, three outboard engines, with visible packages consistent in size and shape with bales of narcotics on deck, and no indicia of nationality. (Id.). USCG diverted Holland for interception. (Id.).

USCG personnel from Holland were launched to intercept the vessel. Upon arriving on the scene, the target vessel failed to heave, and evaded law enforcement. (Id.). During pursuit of the target vessel, USCG personnel observed persons onboard the target vessel jettisoning packages overboard. (Id.). Law enforcement expended several rounds of warning shots which were ineffective. (Id.). Law enforcement subsequently used disabling fire and gained positive control of the target vessel. (Id.). Law enforcement also launched assets to relocate and recover the jettisoned packages. (Id.).

Civil No. 25-1623 (GMM)
Page -3-

Upon boarding, USCG personnel identified the master, who made a verbal claim of Venezuelan nationality for himself and the vessel. (Id.). After proper USCG verification protocol, the recognized Government of Venezuela stated that they could neither confirm nor deny registry for the vessel. (Id.). USCG granted authorization to treat the vessel as one without nationality and to conduct a full law enforcement boarding. (Id.). Law enforcement identified the persons onboard as the Petitioner and his co-Defendants. (Id.). The four persons on board claimed Venezuelan citizenship. (Id. at 6). Additionally, law enforcement recovered forty-one (41) bales of contraband. (Docket No. 70 at 14). Two narcotics identification kit tests were conducted which yielded positive results for cocaine. Subsequent laboratory testing confirmed a total weight of 1,026 kilograms of cocaine. (Id.).

On August 25, 2021, a grand jury returned an *Indictment* charging the Petitioner and his three co-defendants Wolfgang Marval, Sadiel Lugo, and Rafael Lugo with three violations of the Maritime Drug Law Enforcement Act ("MDLEA"): conspiracy to possess with intent to distribute a controlled substance aboard a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b) (Count One); aiding and abetting in the possession with intent to distribute a controlled

Civil No. 25-1623 (GMM)
Page -4-

substance aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1) and 18 U.S.C. §2 (Count Two); and aiding and abetting to jettisoning narcotics subject to forfeiture under 21 U.S.C. §881(a), from a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §70503(a)(2) and 18 U.S.C. §2 (Count Three). (Crim. No. 21-295 (SCC), Docket No. 10). On February 29, 2024, the Petitioner filed a *Request to Join the Motion to Dismiss on Speedy Trial Grounds* filed in Crim. 21-295 (SCC) at Docket No. 60. (Crim. No. 21-295 (SCC), Docket No. 66). On April 19, 2024, the case was dismissed without prejudice due to speedy trial violations. (Crim. No. 21-295 (SCC), Docket No. 77).

On April 25, 2024, a grand jury returned a three-count *Indictment* charging the same defendants - the Petitioner, Wolfgang Marval, Sadiel Lugo and Rafael Lugo - again with MDLEA violations. (Crim. No. 24-153 (GMM), Docket No. 1) The charges filed in the *Indictment* were the same charges filed in the previous case, which had been dismissed without prejudice.

The Petitioner, who was then represented by appointed counsel, engaged in extensive plea negotiations with the Government. On July 1, 2024, the Petitioner informed that he had reached an agreement with the Government. (Docket No. 69).

Civil No. 25-1623 (GMM)
Page -5-

Accordingly, on July 8, 2024, pursuant to a plea agreement and supplement, the Petitioner plead guilty to Count One of the *Indictment*, which charged him with conspiracy to possess with intent to distribute cocaine aboard a vessel subject to the jurisdiction of the United States. (Crim. No. 24-153 (GMM), Docket Nos. 77, 82). For the purposes of his *Plea and Forfeiture Agreement*, the Petitioner agreed that he combined, conspired and cooperated with persons known and unknown to the grand jury to possess with intent to distribute at least 150 kilograms, but less than 450 kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States. (Crim. No. 24-153 (GMM), Docket No. 77 at 2).

On October 4, 2024, Petitioner was sentenced to eighty-seven (87) months of imprisonment, in accordance with the joint sentencing recommendation provided in the *Plea and Forfeiture Agreement*. (Crim. No. 24-153 (GMM), Docket No. 121). On December 9, 2024, upon request by the U.S. Probation Office, both the *Judgment* and the *Statement of Reasons* were "amended to reflect the intent of the Court at sentencing, which was to impose a downward variance sentence of 87 months, as jointly recommended by the parties in the Plea Agreement," and "in turn, allow the BOP to consider the time the defendant spent in custody in the prior

Civil No. 25-1623 (GMM)
Page -6-

dismissed case as time to be credited towards this sentence."
(Crim. No. 24-153 (GMM), Docket Nos. 149-50). The record does not
reflect that the Petitioner appealed the sentence imposed.

On November 14, 2025, the Petitioner filed his *Motion to
Vacate*. (Docket No. 1). Upon the Court's order, the Government
filed its response on March 18, 2026. (Docket No. 5). The
Government argues that the Petitioner's request is untimely, since
he filed the *Motion to Vacate* over a year after October 4, 2024,
the date the final judgment was issued. (Id. at 6).

On April 20, 2026, Petitioner's *Reply* was docketed, though it
was signed on April 15, 2026 and postmarked on April 17, 2026.
(Docket No. 6).

## II. STANDARD OF REVIEW

Pursuant to Section 2255, "[a] prisoner in custody under
sentence of a court established by [an] Act of Congress . . . may
move the court which imposed the sentence to vacate, set aside or
correct the sentence." 28 U.S.C. § 2255(a). "[T]he statute provides
for post-conviction relief in four instances, namely, if the
petitioner's sentence (1) was imposed in violation of the
Constitution, or (2) was imposed by a court that lacked
jurisdiction, or (3) exceeded the statutory maximum, or (4) was
otherwise subject to collateral attack." David v. United States,

Civil No. 25-1623 (GMM)
Page -7-

134 F.3d 470, 474 (1st Cir. 1998) (*citing* Hill v. United States, 368 U.S. 424, 426-27 (1962)). Claims that do not allege constitutional or jurisdictional errors are properly brought under Section 2255 only if the claimed error is a "'fundamental defect[s]' which, if uncorrected, will 'result[ ] in a complete miscarriage of justice,' or an omission inconsistent with the rudimentary demands of fair procedure." Id.

Section 2255 claims have a one-year statute of limitations. 28 U.S.C. § 2255(f). This applies even to jurisdictional challenges. *See* Barreto-Barreto v. United States, 551 F.3d 95, 100 (1st Cir. 2008) ("Nothing in the language of § 2255 suggests that jurisdictional challenges are exempt from the one-year limitations period. To the contrary, § 2255(f) explicitly states that the limitations period 'shall apply' to all motions made under § 2255.").

A motion under Section 2255 is not a substitute for a direct appeal. Foster v. Chatman, 578 U.S. 488, 519 (2016) (Alito, J., concurring in judgment). As a result, "as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal." Id. (citations omitted). Moreover, "[c]ollateral relief in a § 2255 proceeding is generally unavailable if the petitioner has

Civil No. 25-1623 (GMM)
Page -8-

procedurally defaulted his claim by failing to raise the claim in a timely manner at trial or on direct appeal." Bucci v. United States, 662 F.3d 18, 27 (1st Cir. 2011) (internal citations omitted). If a section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from judicial review unless Petitioner can demonstrate both (1) cause for the procedural default and (2) actual prejudice resulting from the error asserted. Id.; United States v. Frady, 456 U.S. 152, 167-68 (1982).

### III. APPLICABLE LAW AND DISCUSSION

At the outset, the Court recognizes that a motion that is filed pro se must be construed more leniently than one drafted by an attorney. *See* Erickson v. Pardus, 551 U.S. 89, 94 (2007). The motion, nevertheless, must comply with the procedural and substantive requirements of the law. *See* Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

Here, the Petitioner moves to vacate, set aside or correct his sentence on two grounds. First, he alleges that the Court lacked subject matter jurisdiction because Petitioner's transfer to the United States's custody was allegedly in violation of international asylum law and because the maritime zone was not

Civil No. 25-1623 (GMM)
Page -9-

"high seas" under the U.S. Constitution's Felonies Clause.[2] Second, he claims ineffective assistance of counsel for failure to raise or preserve the issue and for failure to argue for the application of proposed 2025 United States Sentencing Commission guideline amendments, mandatory zero-point offender reductions, and role adjustments. (Docket No. 1 at 1).

The Court need not address the merits of the Petitioner's claims, however, because it concludes that the *Motion to Vacate* is untimely.

As noted above, the Petitioner did not file a direct appeal. Therefore, his conviction became final when the time for filing an appeal, fourteen (14) days, expired. Fed. R. App. P. 4(b)(1)(A). In this case, *Judgment* was entered on October 4, 2024. (Docket No. 122). On December 9, 2024, the Court entered an *Amended Judgment* to clearly reflect the reasons for imposing the downward variance, (Docket Nos. 149-52), but the judgment itself remained unaltered as to the 87 months of imprisonment imposed on October 4, 2024.

---

[2] Notably, however - as to the jurisdictional matter - Petitioner agreed that he was in international waters when the vessel was intercepted as reflected in the *Plea and Forfeiture Agreement* and its *Stipulation of Facts*. (Docket No. 79). To date, no opinion from the First Circuit or the Supreme Court holds the MDLEA to be unconstitutional, and Petitioner has not filed an appeal or previously challenged the constitutionality of the MDLEA in the related criminal case Crim. No. 24-153 (GMM).

Civil No. 25-1623 (GMM)
Page -10-

Although the Petitioner does not argue that December 9, 2024 constitutes his date of final judgment, the Court affirms that the date of the final judgment is October 4, 2024.[3] *See* Barreto-Barreto, 551 F.3d at 99 n.2; *see also* Docket No. 5 at 6.

Accordingly, pursuant to Section 2255(f), the Petitioner was required to file his *Motion to Vacate* within one year of "the date on which the judgment of conviction [became] final," meaning by October 18, 2024. 28 U.S.C. § 2255(f)(1).  Pleadings by an incarcerated petitioner are deemed filed on the date they were placed into the prison's official mail system. *See* Rule 3(d), Rules Governing Section 2255 Proceedings for the United States District Court. This would have required the petition to be placed in the system by October 18, 2025. Instead, the Petitioner signed his

---

[3] On April 17, 2026 —nearly a month after the reply deadline lapsed— Petitioner filed a *Reply* to the Government's *Opposition to Motion to Vacate*. (Docket No. 6). As such, Petitioner's *Reply* is untimely. In addition, Petitioner also failed to request prior leave of Court to make a tardy filing, which Local Rule 7(c) compels. On top of this, in response to the Government's *Opposition to Motion to Vacate*, the Petitioner brings undeveloped arguments for the first time in reply that were not raised in his original petition. Although the Court must be liberal in its reading of pro se motions, it must also be reasonable and the pro se litigant is obliged to comply the substantive and procedural rules. Here, in addition to being untimely and in violation of Local Rules, Petitioner's *Reply* does not spell out his arguments squarely and distinctly. Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988); *see also* United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). It is black letter law that arguments advanced for the first time in a reply brief are waived. United States v. Eirby, 515 F.3d 31, 36 n.4 (1st Cir. 2008); *see also* Sepulveda v. Marriana, No. 15-CV-186-ML, 2015 WL 4663655, at *1 & n.1 (D.R.I. Aug. 6, 2015) ("declin[ing] to consider the new arguments in [petitioner's] reply brief" to support Section 2241 and 2255 motion because "'[i]ssues raised for the first time in . . . reply brief are generally deemed waived'") (*quoting* United States v. Torres, 162 F.3d 6, 11 (1st Cir. 1998)).

Civil No. 25-1623 (GMM)
Page -11-

*Motion to Vacate* on October 29, 2025, and it was postmarked by his institution's mail system on November 3, 2025 and docketed on November 14, 2025. (Docket No. 1). Even under the most lenient consideration, these dates are both well over a year after the expiration of the limitations period.

Furthermore, Petitioner has not argued that equitable tolling is warranted. The burden to prove this rests squarely on the Petitioner. *See* <u>Butterworth v. United States</u>, 775 F.3d 459, 464 (1st Cir. 2015). Here, the Petitioner does not allege any extraordinary circumstances that prevented him from timely filing his *Motion to Vacate*, nor does he allege that he exercised reasonable diligence in pursuing his rights.

Therefore, absent extraordinary circumstances, the *Motion to Vacate* is time barred.[4] <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 386-87 (2013); <u>Barreto -Barreto v. United States</u>, 551 F.3d at 101.

---

[4] As previously highlighted, the Petitioner filed an untimely and noncompliant *Reply*, which under applicable rules and case law the Court is obliged to disregard. However, even if the Court were to consider the merits of the arguments as to equitable tolling brought in this *Reply*, Petitioner's *Motion to Vacate* would still fail for various reasons. First, the fact that he is claiming ineffective assistance of counsel does not automatically warrant equitable tolling. <u>Gary v. United States</u>, 2 F. App'x 17, 18 (1st Cir. 2001) ("[A]ttorney error does not, as a general rule, warrant equitable tolling."). Second, the Petitioner cites inapposite and inapplicable case law that does not support his arguments. Third, instead of establishing the reasons that would excuse his delay, he requests a stay of this Court's ruling pending the resolution of the distinct and separately filed Section 2255 motions presented by his co-defendants. This request to stay - if evaluated in the merits - would also fail as a matter of law for noncompliance with any of the requisite factors. *See* <u>Nken v. Holder</u>, 556 U.S. 418, 433-34 (2009) (*citing* <u>Landis v. North American Co.</u>, 299 U.S. 248, 255 (1936)). At bottom, Petitioner's Section 2255 motion is

Civil No. 25-1623 (GMM)
Page -12-

In addition, in his *Plea and Forfeiture Agreement* the Petitioner knowingly and voluntarily waived his right to challenge his conviction or sentence on direct appeal or collaterally. (Docket No. 79 at 5 ¶11). The Court conducted a Rule 11 colloquy, confirming that Petitioner understood the waiver's scope. Since the sentence imposed was consistent with the joint recommendation, enforcing the waiver does not constitute a miscarriage of justice. *See* United States v. Teeter, 257 F.3d 14, 23-25 (1st Cir. 2001); United States v. Pratt, 533 F.3d 34, 37 (1st Cir. 2008); United States v. Newbert, 504 F.3d 180, 182 (1st Cir. 2007).

Notwithstanding these procedural obstacles, "a federal habeas petition will be allowed to go forward if the petitioner can show either [] cause for default and actual prejudice resulting from it, or . . . that he is actually innocent." Oakes v. United States, 400 F.3d 92, 95 (1st Cir. 2005); *see also* McQuiggin, 569 U.S. at 392; Bousley v. United States, 523 U.S. 614, 621 (1998). However, here, the Petitioner has failed to even allege any circumstances necessary to overcome the procedural obstacles to obtaining relief under Section 2255.

---

untimely. Nothing in Petitioner's motion suggests that he was either diligent in pursing his claims or that any extraordinary circumstances prevented him from timely filing his motion, and, thus, neither equitable tolling nor a stay is warranted.

Civil No. 25-1623 (GMM)
Page -13-

### IV. CONCLUSION

Based on the foregoing, Petitioner's *Motion to Vacate* is **DENIED**. This case is **DISMISSED WITH PREJUDICE**. The Court will not issue a Certificate of Appealability, as the Petitioner has failed to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, April 29, 2026.

s/ Gina R. Méndez-Miró
GINA R. MENDEZ-MIRO
UNITED STATES DISTRICT JUDGE